*EXHIBIT 1*

Laurie B. Biggs
Blake Y. Boyette
Matthew W. Buckmiller
Katherine A. Fountain
Joseph Z. Frost
John W. King, Jr.
William H. Kroll
Kindelle M. McCullen
Trawick H. Stubbs, Jr.
Christopher B. Venters
Carli S. Woolard

Gary R. Perdue
(1947 - 1997)

# SP

## STUBBS PERDUE

ATTORNEYS AT LAW

9208 Falls of Neuse Road Suite 201
Raleigh, North Carolina 27615

Telephone (919) 870-6258
Facsimile (919) 870-6259

New Bern Office
310 Craven Street
P.O. Box 1654
New Bern, North Carolina 28563

Telephone (252) 633-2700
Facsimile (252) 633-9600

July 11, 2016

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
RESTRICTED DELIVERY

Specialized Loan Servicing LLC
Attn: National Registered Agents, Inc.
Registered Agent
150 Fayetteville Street, Box 1011
Raleigh, NC 27602-1011

Re:  Donald Day and Kum Y. Day v. Specialized Loan Servicing LLC, Wells Fargo
Bank, N.A. as Trustee for First Franklin, Veripro Solutions
File No.: 16 CVS 141

To Whom This May Concern:

Enclosed for service is a copy of the summons and complaint in the above-referenced
case.

Please let us know if you have any questions or concerns.

Sincerely

Catherine P. Landis
Legal Assistant
Enclosures

# STATE OF NORTH CAROLINA

File No. *16 CNS 141*

Greene _____ County

In The General Court Of Justice

☐ District ☒ Superior Court Division

| | |
|---|---|
| *Name Of Plaintiff* | |
| Donald Day and Kum Y. Day | **CIVIL SUMMONS** |
| *Address* | |
| c/o Stubbs & Perdue, P.A., 9208 Falls of Neuse Road, Suite 201 | |
| *City, State, Zip* | ☐ **ALIAS AND PLURIES SUMMONS (ASSESS FEE)** |
| Raleigh, NC 27615 | |

**VERSUS**

G.S. 1A-1, Rules 3, 4

| *Name Of Defendant(s)* | *Date Original Summons Issued* |
|---|---|
| Specialized Loan Servicing LLC, Wells Fargo Bank, N.A. as Trustee for First Franklin, Veripro Solutions Inc. | *Date(s) Subsequent Summons(es) Issued* |

### To Each Of The Defendant(s) Named Below:

| *Name And Address Of Defendant 1* | *Name And Address Of Defendant 2* |
|---|---|
| Specialized Loan Servicing LLC | Wells Fargo Bank, N.A. as Trustee for First Franklin Mortgage |
| Attn: National Registered Agents, Inc., Registered Agent | Attn: Corporation Service Company, Registered Agent |
| 150 Fayetteville Street, Box 1011 | 327 Hillsborough Street |
| Raleigh      NC   27602-1011 | Raleigh      NC     27603 |

### A Civil Action Has Been Commenced Against You!

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| *Name And Address Of Plaintiff's Attorney (If None, Address Of Plaintiff)* | *Date Issued* | *Time* | ☐ AM |
|---|---|---|---|
| Matthew W. Buckmiller | 7-1-16 | 4:30 | ☒ PM |
| Stubbs & Perdue, P.A. | *Signature* | | |
| 9208 Falls of Neuse Road, Suite 201 | | | |
| Raleigh, NC 27615 | ☐ *Deputy CSC*    ☒ *Assistant CSC*    ☐ *Clerk Of Superior Court* | | |

| ☐ **ENDORSEMENT (ASSESS FEE)** | *Date Of Endorsement* | *Time* | ☐ AM |
|---|---|---|---|
| This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | | | ☐ PM |
| | *Signature* | | |
| | ☐ *Deputy CSC*    ☐ *Assistant CSC*    ☐ *Clerk Of Superior Court* | | |

**NOTE TO PARTIES:** *Many counties have MANDATORY ARBITRATION programs in which most cases where the amount in controversy is $15,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.*

(Over)

## RETURN OF SERVICE

I certify that this Summons and a copy of the complaint were received and served as follows:

### DEFENDANT 1

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

### DEFENDANT 2

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason.

| Service Fee Paid | Signature Of Deputy Sheriff Making Return |
|---|---|
| $ | |
| Date Received | Name Of Sheriff (Type Or Print) |
| Date Of Return | County Of Sheriff |

STATE OF NORTH CAROLINA ) IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
GREENE COUNTY ) FILE NO.: 16-CVS-141

DONALD DAY and KUM Y. DAY )
)
Plaintiff ) **COMPLAINT**
v. )
) [Jury Trial Demanded]
SPECIALIZED LOAN SERVICING LLC, )
WELLS FARGO BANK, N.A. as Trustee for )
FIRST FRANKLIN MORTGAGE LOAN )
TRUST 2006-FFB, MORTGAGE PASS- )
THROUGH CERTIFI-CATES, SERIES )
2006-FFB, and VERIPRO SOLUTIONS INC. )
)
Defendant.

**NOW COME** Plaintiffs DONALD DAY and KUM Y. DAY") (collectively, the "Plaintiffs" or the "Days"), by and through their undersigned counsel of record, hereby complaining of Defendants SPECIALIZED LOAN SERVICING LLC ("SLS"), WELLS FARGO BANK, N.A. as Trustee for FIRST FRANKLIN MORTGAGE LOAN TRUST 2006-FFB, MORTGAGE PASS-THROUGH CERTIFI-CATES, SERIES 2006-FFB ("Trust"), and VERIPRO SOLUTIONS INC., ("Veripro") by alleging and asserting as follows:

## INTRODUCTION AND NATURE OF THE ACTION

1.  This is an action, commenced by Plaintiffs against Defendants, seeking compensatory, statutory, treble and punitive damages, attorneys' fees and expenses in redress of (A) Defendants' violations of the North Carolina Debt Collection Act, N.C. Gen. Stat. § 75-50 et seq. (the "NCDCA"), the North Carolina Collection Agency Act, N.C. Gen. Stat. § 58-70-90 et seq. (the "NCCAA") and/or, by implication, the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1 et seq. (the "UDTPA"); (B); alternatively, Defendants'

negligent conduct as alleged herein, and (C) also seeks a declaratory judgment and to quiet title to the Property related to a Deed of Trust purportedly held by Trust as described in more detail below.

## PARTIES

2.      Plaintiff are citizens and residents of Greene County, North Carolina.

3.      Defendant SLS is a mortgage servicer operating in the State of North Carolina, principally involving debt collections incident to mortgages secured by principal residences who, upon information and belief possesses a principal place of business in Highlands Ranch, Colorado.

4.      Defendant Trust's trustee Wells Fargo Bank, N.A., is a national banking association.

5.      Veripro Solutions, Inc. ("Veripro") is a corporation with its principal place of business located in Lewisville, Texas but transacting business in North Carolina pursuant to a Certificate of Authority.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over Defendants pursuant to N.C. Gen. Stat. § 1-75.4, who have and continue to engage in substantial activity within the State of North Carolina.

7.      Subject-matter jurisdiction is conferred upon and vested in this Court pursuant to, and by virtue of, among others, N.C. Gen. Stat. §§ 7A-240 and 7A-243.

8.      Venue is proper in this Court, pursuant to N.C. Gen. Stat. §§ 1-80 and 1-82, as Plaintiffs are citizens of, and resides in, Greene County, North Carolina.

2

9.      **To the extent jurisdiction remains in state court, Plaintiff specifically waives the right to collect $75,000.00 or more from the collective Defendants in this case, exclusive of interest and costs.**

## FACTUAL ALLEGATIONS

10.      On or around September 28, 2006, the Plaintiffs purchased a residence located at 303 Harper Street, Snow Hill, Greene County, North Carolina (the "Property").

11.      According to the HUD-1, Plaintiffs financed the Property with NationPoint institutions via two separate loans.

12.      Plaintiffs had a first loan in the original principal amount of $130,800, which was secured by the Property. The first loan is not the subject of this action.

13.      Plaintiffs had a second loan with NationPoint, a division of National City Bank, in the approximate amount of $32,700 ("debt" or "Second Note" or "Second Loan"), allegedly secured by the Property which is the subject of this action.

14.      Pursuant to the second loan, Mortgage Electronic Registration Systems, Inc. ("MERS") was the named beneficiary under the Second Deed of Trust.

15.      First Franklin Loan Services was indicated as the initial servicer of the Second Loan.

16.      Upon information and belief, from and after the date of the closing in 2006, NationPoint sent monthly statements to the Plaintiffs up until September 2010.

17.      On or around September 15, 2010, BAC Home Loans Servicing, LP ("BAC"), informed Plaintiffs that it would be the new servicer.

3

18.     BAC then began sending monthly statements to the Plaintiffs until BAC merged with Bank of America on or around September 28, 2011, upon which time Bank of America sent monthly statements and other correspondence to the Plaintiffs.

19.     The last payment made on the Second Note by the Plaintiffs occurred on or around October 2011 however, notwithstanding the three (3) year statute of limitations on collection of the Second Note, Bank of America continued to try and collect on the debt after October 2014.

20.     Upon information and belief, on or around June of 2012, the Second Deed of Trust and Note was assigned by MERS to "Wells Fargo Bank, N.A., as Trustee for the Holders of the First Franklin Mortgage Loan Trust 2006-FFB, Mortgage Pass-Through Certificates, Series 2006-FFB."

21.     The Assignment of Deed of Trust was signed by Martha Munoz on behalf of MERS despite upon information and belief, Munoz never being an agent of MERS and being a known "robo-signer" for Wells Fargo at the time.

22.     Upon information and belief, neither the Second Note nor the Second Deed of Trust were validly assigned.

23.     In fact, upon information and belief, the Note had been assigned to First Franklin Financial Corporation prior to the purported assignment in June of 2012.

24.     In September of 2012, Plaintiffs, being confused about who held and/or serviced the Second Note, asked Wells Fargo and Bank of America about who owned the Second Note.

25.     On September 20, 2012, Plaintiffs received a letter from Wells Fargo indicating that it was the trustee of the securitization that held the Second Note.

4

26.    On September 21, 2012, Plaintiffs received a letter from Bank of America indicating that the owner of the loan was "AURORA FFMLT 2006-FFB."

27.    Plaintiffs made efforts to get the Second Note modified but could not do so despite repeated attempts with Bank of America.

28.    On October 3, 2012, Plaintiffs received a letter from Veripro Solutions ("Veripro") indicating that the Second Note had been referred to Veripro from the previous servicer, Bank of America, for collections and was presumably the new servicer on the Second Loan.

29.    Veripro indicated falsely in the letter that if Plaintiffs did not dispute the debt within 30 days that Veripro would "obtain a copy of a judgment."

30.    On October 4, 2012, Plaintiffs received a letter from NSM Recovery Services, a Nationstar Mortgage LLC Company, indicating that the Second Note had been referred to NSM Recovery Services, Inc. from Aurora Loan Services to secure payment of the debt.

31.    Upon information and belief, Veripro formally conducted its business as NSM Recovery Services, Inc.

32.    Despite the Second Note being referred to collections, in November of 2012, Plaintiff received a default letter from Bank of America indicating that the last date of payment on the Second Note was October 1, 2011 and indicating that it would foreclose on the Property.

33.    Similarly, in November of 2012, Bank of America informed Plaintiffs it was the servicer of the Second Note despite Veripro sending letters indicating that the Second Note was referred to collections.

34.    In May of 2013, Plaintiffs were sent a Notice of Intent to Accelerate by Bank of America as the purported servicer of the Second Note.

5

35.     In June of 2013, Plaintiff received a default letter from Bank of America indicating that the last date of payment on the Second Note was November 7, 2011 and again indicating that it would foreclose on the Property.

36.     In July of 2013, Plaintiffs were sent a Notice of Intent to Accelerate by Bank of America as the purported servicer of the Second Note.

37.     In December of 2013, Plaintiff was again informed by US Bank that the Second Note had been sent to Veripro for recovery and collections.

38.     On February 21, 2014, Plaintiff was informed by Wells Fargo that Nationstar was the servicer of the Second Note.

39.     On March 26, 2014 and again on August 15, 2014, Plaintiff was informed by Bank of America that it was the servicer of the Second Note.

40.     On October 14, 2014, Plaintiffs received a letter from Veripro Solutions indicating that the original creditor was Aurora Loan Services, Inc.

41.     Accordingly, on several occasions, Plaintiffs were informed by the Defendants and various other parties that the Second Note was held by two different holders and was being serviced by at least four different servicers, sometimes three servicers at a time.

42.     On November 12, 2014, Plaintiff was informed by Bank of America that Defendant Specialized Loan Servicing LLC was the new servicer as of December 1, 2014.

43.     The statute of limitations to collect on the Second Note expired in November of 2014 as the Second Note was not executed under seal.

44.     On December 12, 2014, the Plaintiffs were informed by SLS that they were the new servicer of the Second Note.

6

45. On December 14, 2014, the Plaintiffs were informed that the holder of the Second Note was Wells Fargo Bank as Trustee for First Franklin Mortgage Loan Trust 2006-FFB.

46. On December 15, 2014, SLS began sending monthly statements to Plaintiffs seeking to collect on the Second Note.

47. At the time it began sending monthly statements providing that "THIS IS AN ATTEMPT TO COLLECT A DEBT" the statute of limitations on the Second Note had expired.

48. SLS did so with actual and/or apparent authority on behalf of the Trust.

49. Subsequent to SLS purportedly taking over servicing rights for the Second Note, Veripro has also sent correspondence to the Plaintiffs attempting to collect on the Second Note and contending amounts are still owed under the Second Note.

50. On December 16, 2014, SLS sent a notice to the Plaintiffs acknowledging that it was aware that Plaintiffs were represented by an attorney.

51. Notwithstanding said notice, SLS continued attempts to collect on the debt, including but not limited to written and verbal communications sent directly to the Plaintiffs.

52. On January 17, 2015, SLS sent a notice to the Plaintiffs acknowledging that it was aware that Plaintiffs were represented by an attorney.

53. On January 27, 2016, Plaintiffs received a letter from Veripro Solutions seeking to collect on the debt and contending that $33,450.07 was owed on the Second Loan, and further indicating that they had become the servicer of the Loan from Bank of America on October 1, 2012.

54. SLS sent to directly to Plaintiffs monthly statements up through February 18, 2016.

7

55.     On March 14, 2016, Veripro sent correspondence to the Plaintiffs seeking to collect on the debt and contending that $33,450.07 was owed on the Second Loan.

56.     On April 13, 2016 SLS sent a notice to the Plaintiffs acknowledging that it was aware that Plaintiffs were represented by an attorney.

57.     Notwithstanding the foregoing representation by counsel, SLS continued to send out statements and correspondence to Plaintiffs.

58.     More importantly, SLS also continued to send various correspondence and call Plaintiffs attempting to collect on the debt after expiration of the statute of limitations.

59.     Veripro sent various correspondence to Plaintiffs attempting to collect on the debt after expiration of the statute of limitations.

60.     In 2015, SLS was informed via email communication and telephonic communications from Plaintiffs' counsel that the statute of limitations on the Second Note expired in November of 2014.

61.     Notwithstanding the foregoing communications, SLS continued to send out statements and correspondence to Plaintiffs directly seeking to collect on the stale claims where they were previously informed that all communications should be made with Plaintiffs' attorney.

62.     SLS is a debt collector as that term is defined under N.C. Gen. Stat. § 75-50(3).

63.     Upon information and belief, Defendant Trust employed Defendant SLS as its agent to service and collect the outstanding indebtedness owed by Plaintiffs under the Second Note.

64.     Veripro is either a "debt collectors," as that term is defined pursuant to N.C. Gen. Stat. § 75-50(3) or a "collection agency" as that term is defined under N.C. Gen. Stat. § 58-70-15.

8

65.     Upon information and belief, Defendant Veripro engaged, directly and indirectly, in soliciting, asserting and enforcing the right to collect the alleged outstanding balance under the Second Note from Plaintiffs and is an actual or apparent agent of Defendant Trust.

## FIRST CLAIM FOR RELIEF
**(North Carolina Debt Collection Act, North Carolina Collection Agency Act, and North Carolina Unfair and Deceptive Trade Practices Act)**
[N.C. Gen. Stat. §§ 58-70-90 et seq., 75-1.1 et seq., and 75-50 et seq.]

66.     Plaintiffs incorporate herein by reference all the foregoing allegations in this Complaint, as if fully set forth herein.

67.     Plaintiffs are individuals who incurred the Second Loan which was for personal, family, household or agricultural purposes.

68.     Plaintiffs, therefore, are each a "consumer," as that term is defined under N.C. Gen. Stat. §§ 58-70-90(2) and 75-50(1).

69.     The relationship between Plaintiffs and Defendants arose out of the Second Loan which constitutes a "debt," as that term is defined in N.C. Gen. Stat. § 75-50(2).

70.     Defendants, by virtue of the above-referenced course of conduct, actions and practices, engaged—directly and indirectly—in the collection of the Second Loan.

71.     Defendants, by definition, are either "debt collectors," as that term is defined pursuant to N.C. Gen. Stat. § 75-50(3) or Veripro may be a "collection agency" as that term is defined under N.C. Gen. Stat. § 58-70-15.

72.     Defendant SLS engaged, directly and indirectly, in soliciting, asserting and enforcing the right to collect the alleged outstanding balance under the Second Loan from Plaintiffs.

9

73.     Upon information and belief, and by virtue of the servicing and pooling agreement between Defendants, Defendant Trust employed Defendant SLS as its agent to service and collect the outstanding indebtedness contended owed by Plaintiffs under the Second Loan.

74.     Upon information and belief, the aforementioned practices and actions displayed by Defendants are their standard procedure and practice towards borrowers, such as Plaintiffs, for which the Defendants are motivated by enhanced profits.

75.     Defendant's conduct, including but not limited to, the continuous remittance of written and telephonic communications to Plaintiffs, which were incorrect, erroneous, otherwise deceptive and in direct violation of law, was grossly negligent and/or willful, rendering it liable for attempting to collect fees, interest, and expenses from Plaintiffs that are not authorized by any agreement, including the Second Loan, or permitted by applicable federal and North Carolina law.

76.     Defendants violated the UDTPA by utilizing false, deceptive, misleading, oppressive, and unscrupulous, representations, measures or methods in connection with the collection, servicing and other activities relating to Plaintiffs and the Second Loan as prohibited by Chapter 75 of the North Carolina General Statutes including, but not limited to falsely representing the character, amount or legal status of a debt, as prohibited by N.C. Gen. Stat. §§ 58-70-110 and 75-54, and using false representations or deceptive measures to collect or attempt to collect a debt from the Plaintiffs.

77.     Said violations include, but are not limited to, the following:

A. Repeatedly representing the character, amount, or legal status of the Second Loan falsely and incorrectly to Plaintiffs and other third-party users;

B. Remitting, on numerous occasions and without any basis, notices, statements, correspondence and other communications which claimed that the Second Loan was owed;

10

C. Repeatedly informing Plaintiffs, on their home and cellular telephones, that the payments due on the Second Loan were delinquent, when in fact they were not owed;

D. Utilizing false representations and deceptive measures to collect or attempt to collect amounts from Plaintiffs, which are in excess of what is legally proscribed or allowed by law, none of which are permitted or authorized;

E. Employing the aforementioned collection methods and procedures, with the explicit knowledge that such conduct was in violation of law;

F. Refusing, despite repeated requests by Plaintiffs and their counsel, to conform their conduct including, but not limited to the servicing and collection of amounts owed under the Second Loan pursuant to applicable law; and

G. Undertaking actions which Defendants knew, or should have known, offends the well-established public policy of the State of North Carolina, federal and state law, and was otherwise immoral, oppressive, unscrupulous, deceptive and substantially injurious to consumers, such as Plaintiffs.

78. In the Mortgage Statements—which were sent to Plaintiffs on a monthly basis for the Second Loan — SLS utilized false, deceptive and misleading written communications and representations in connection with the collection of the Loan.

79. The written and telephonic communications and representations—made or initiated by Defendants—possessed the tendency or capacity to mislead or created likelihood of deception, in violation of N.C. Gen. Stat. § 75-1.1.

80. Defendants' course of conduct—in addition to their willfulness and indifference to the repeated errors and falsity of information contained in the Monthly Statements and other correspondence they sent to Plaintiffs, communicated credit information relating to Plaintiffs to third parties, which it knew to be false, misleading, inaccurate, incomplete and/or inconsistent.

81. Said information was conveyed by Defendant to third parties, notwithstanding it being placed on unequivocal notice of the discrepancies present in the Monthly Statements on numerous prior instances by Plaintiffs and their counsel.

11

82. Said representations included but were not limited to, repeatedly notifying Plaintiffs that the debt was owed.

83. In addition, Defendants—on numerous occasions—falsely represented that the balance of the Second Loan would be increased by fees, charges, expenses, advances and costs that were not authorized nor permitted under the Loan and applicable law, in violation of Chapter 75 of the North Carolina General Statues.

84. By assessing and charging amounts to the Second Loan, which are neither expressly authorized nor supported by the sequence of events, Defendants are, and will continue, utilizing unfair and unconscionable means to collect and/or attempt to collect the Second Loan, in violation of the NCDCA, the NCCAA, and the UDTPA.

85. The aforementioned actions displayed by Defendant constitutes unconscionable, unfair, deceptive, misleading and unscrupulous conduct, the natural consequence of which is to harass, oppress or abuse Plaintiffs in connection with the collection of the amounts allegedly owed under the Loan, in violation of the UDTPA.

86. The actions of Defendants complained of herein, were willful as demonstrated by their continued refusal to comply with the terms of the Second Loan and applicable North Carolina law.

87. Defendants' actions and conduct were, in addition, patently unfair when judged against their profit-incentivized motive, intention, and the extremely negative effects that its actions and conduct have upon the average ordinary North Carolina citizens and consumers, including Plaintiffs.

12

88.    The unscrupulous, immoral, oppressive and harassing actions and conduct of Defendants, as set forth herein, proximately caused economic injury to Plaintiffs, are in and affecting commerce and have the capacity to deceive an ordinary consumer.

89.    Defendants' actions, pattern of conduct and continued refusal to cease any and all prohibited and unlawful communications (written and telephonic) to Plaintiffs, as alleged herein, constitute unfair and deceptive acts or practices pursuant to Chapter 75 of the North Carolina General Statutes.

90.    Plaintiffs' claims for unfair and deceptive trade practices against Defendants includes, but are not limited to, the following:

> A. The actions and course of conduct of Defendants, as detailed herein, offend established public policy, federal and state banking law, are immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to North Carolina consumers;
>
> B. The failure of Defendants to act, as a reasonably prudent financial institution, servicer, creditor, and business entity would under the same or similar circumstances;
>
> C. Knowingly reporting false, inaccurate and misleading information relating to Plaintiffs and the Second Loan to third parties, including CRAs;
>
> D. The substantially aggravating circumstances attendant to Defendants' breaches of contract and multiple violations of applicable North Carolina law.

91.    Plaintiffs, on account of Defendants' course of conduct, as alleged herein, sustained substantial damages including, but not limited to, impairment to their creditworthiness, loss of business opportunities and prospects, emotional distress and other pecuniary losses, expenses, costs and damages, including but not limited to, the attorneys' fees and expenses incurred in connection with the prosecution of this matter.

92.    As a direct and proximate result of the foregoing actions, conduct and practices employed by Defendants, Plaintiffs are entitled to have and recover against them, jointly and

13

severally, (i) actual damages in an amount in excess of TWENTY-FIVE THOUSAND DOLLARS ($25,000.00), (ii) treble damages against Defendants pursuant to N.C.G.S. § 75-16 and § 58-70-120; (iii) reasonable costs and attorneys' fees, as provided in N.C. Gen. Stat. §§ 75-16.1, 75-56 and 58-70-120; and (iv) civil penalties not less than FIVE HUNDRED DOLLARS ($500.00) nor greater than FOUR THOUSAND DOLLARS ($4,000.00) for each violation pursuant to N.C. Gen. Stat. §§ 75-56 and 58-70-120.

### SECOND CLAIM FOR RELIEF
**(*In the Alternative* – Negligence)**

93.     Plaintiffs incorporate herein by reference all the allegations contained in this Complaint as if fully set forth herein.

94.     At all times herein, Defendants had a duty to conduct themselves as a reasonably prudent person, lender, financial institution, mortgage servicer, creditor or other business entity would under the same or similar circumstances, to conform its actions to applicable law governing the collection of the Second Loan, and not to engage in conduct which is contrary to applicable law or otherwise offends the established public policy of the State of North Carolina

95.     Defendants were negligent in that they failed to:

    A.  Conform its actions, course of conduct and practices relating to the servicing and collection of the Second Loan to the North Carolina law and the terms of the Second Loan;

    B.  Adhere to the customary practices established by institutions and participants in the residential real estate, financial and mortgage servicing industries regarding the collection and servicing of the Second Loan;

    C.  Employ collection methods which complied with the applicable provisions of the NCDCA, the NCCAA, and the UDTPA, as described herein;

    D.  Conduct a reasonable investigation of the discrepancies, inaccuracies, inconsistencies and other errors present in the Mortgage Statements upon notification of their existence by Plaintiffs and their counsel;

14

E. Act as reasonably prudent financial institutions, mortgage servicers, and business entities would under the same or similar circumstances;

F. Employ a dispute resolution procedure or other procedural safeguards that would have addressed or ascertained the source of the inconsistencies and errors and/or mitigated the damages suffered by Plaintiffs; and

G. Take any such action or employ any alternative procedure to address the concerns and issues raised by Plaintiffs that a reasonably prudent person or business entity would under the same or similar circumstances.

96. As set forth in detail above, Defendants repeatedly breached the duties owed to Plaintiffs and were otherwise negligent.

97. As a direct and proximate result of the aforementioned negligence of Defendants, Plaintiffs have suffered and continue to be plagued by severe emotional distress.

98. Additionally, and as a result of Defendants' negligent conduct and actions, Plaintiffs have incurred significant costs and expenses, including but not limited to attorneys' fees, and have suffered significant financial harm, lost wages, loss of business prospects and income, and severe emotional distress, and other such damages to be proven at the trial.

99. Such costs, expenses, loss of income, loss of wages, and degradation of business prospects, are anticipated to continue in the future so long as Defendants continue to employ the aforementioned measures and methods to collect the Loan.

100. Based upon the foregoing negligence of Defendants, Plaintiffs have suffered, and therefore, are entitled to recover compensatory damages in an amount in excess of TWENTY-FIVE THOUSAND DOLLARS ($25,000.00) from Defendants, jointly and severally.

### THIRD CLAIM FOR RELIEF
#### (Declaratory Judgment – N.C.G.S. §1-253)

101. Plaintiffs incorporate herein by reference all the allegations contained in this Complaint as if fully set forth herein.

15

102.    Plaintiffs bring this action pursuant to N.C. Gen. Stat. § 1-253. This court has jurisdiction over the parties and there is a justiciable case and/or controversy between the parties, regarding what the property rights and interests of the and Defendant Trust is with respect to the Property and specifically whether there is a valid Deed of Trust on the Property with a potential maximum amount of $32,700 held by Defendant Trust.

103.    The Plaintiffs have the right, therefore, to have this Court issue a declaratory judgment on this and any other issues that might arise during the course of this litigation.

### FOURTH CLAIM FOR RELIEF
(Quiet Title Action)

104.    Plaintiffs incorporate herein by reference all the allegations contained in this Complaint as if fully set forth herein.

105.    Plaintiffs seek a determination by this Court that it holds title to the Property in fee simple and that the Trust has no lien, actual or equitable, on the Property.

106.    **To the extent jurisdiction remains in state court, Plaintiff specifically waives the right to collect $75,000.00 or more from the collective Defendants in this case, exclusive of interest and costs.**

### PRAYER FOR RELIEF

**WHEREFORE** and based on the foregoing, the Plaintiffs pray from the Court the following relief:

1.    Plaintiffs have and recover judgment against Defendants, jointly and severally, for any and all compensatory damages suffered as a result of the actions complained of herein in an amount exceeding TWENTY-FIVE THOUSAND DOLLARS ($25,000.00), plus interest as allowed by law;

2.    Plaintiffs recover punitive damages from Defendants, jointly and severally, in an

16

amount to be determined at trial;

    3.    Plaintiffs have and recover from Defendants, jointly and severally, on account of their numerous violations of the NCDCA and NCCAA, statutory damages in an amount equal to FIVE HUNDRED DOLLARS ($500.00) for the first violation, ONE THOUSAND DOLLARS ($1,000.00) for the second violation, and FOUR THOUSAND DOLLARS ($4,000.00) for the third and each violation thereafter that occurred following the first violation pursuant to N.C. Gen. Stat. § 75-56 that has continued pursuant to N.C. Gen. Stat. § 75-8.

    4.    Any damages awarded to Plaintiffs, on account of Defendants' violations of Chapter 75 of the North Carolina General Statutes, be trebled pursuant to provisions of N.C. Gen. Stat. § 75-16;

    5.    The costs of this action, including Plaintiffs' reasonable attorneys' fees in accordance with N.C. Gen. Stat. §75-16.1, be taxed by the Court against Defendants;

    6.    That the Court decree, declare, and adjudge that Plaintiffs own the free from any lien purportedly held by the Trust, and are entitled to the quiet and peaceful possession of the Property, and that Defendants and all persons claiming under them, have no estate, right, lien, or interest in or to the Property or any part thereof;

    7.    For a trial by jury on all issues so triable; and

    8.    For such other and further relief as to the Court deems just and proper.

Respectfully submitted this, the _30_ th day of June, 2016.

**STUBBS & PERDUE, P.A.**
*Attorneys for Plaintiffs*

**MATTHEW W. BUCKMILLER**
N.C. State Bar No.: 35194
9208    Falls    of    Neuse    Road,    Suite    201
Raleigh, North Carolina 27615
Local: (919) 870-6258
Fax: (919) 870-6259
Email: mbuckmiller@stubbsperdue.com

18